William J. Regas", S.
William J. Fitzsimmons and Pearl T. Fitzsimmons, his wife, were found dead in their home on January 12,1969. Both decedents allegedly died as the result of assaults committed upon them by their son, George Fitzsimmons. George Fitzsimmons is the sole distributee of each decedent.
Subsequent to January 12, 1969 George Fitzsimmons was indicted and tried for the murder of his parents. Trial was had in Supreme Court, Erie County, before Charles J. Gatjghah, Supreme Court Justice, without a jury, who, at the conclusion of the evidence, found George Fitzsimmons innocent by reason of insanity and directed that he be committed to the custody of the Commissioner of Mental Hygiene at the Buffalo State Hospital. A transcript of that proceeding has been made available to this court and is part of the record herein.
The question to be determined in this judicial settlement proceeding is whether or not George Fitzsimmons should inherit through each of his parents in view of the alleged wrong committed by him. In the event George Fitzsimmons could not inherit by reason of the wrong committed by him then, and in such event, the distributees are brothers and sisters of each decedent. None of the brothers or sisters have offered any objection to the inheritance rights of George Fitzsimmons. This court has heretofore applied what it considers to be applicable law in earlier decisions. (Matter of Bobula, 19 N Y 2d 818, 45 Misc 2d 745; Matter of Wirth, 59 Misc 2d 300.)
In order for George Fitzsimmons to inherit from the estates of his deceased mother and father a finding must he made that he 1 ‘ committed no legal wrong and that the principle barring one from profiting from his own wrong is inapplicable. ’ ’ (Matter of Eckardt, 184 Misc. 748, 757.) “ Such a conclusion is consistent with those cases which would deny inheritance, because in none of them was there a question of the mental condition of the wrongdoer at the time of the wrongful act.” (Matter of Lupka, 56 Misc 2d 677, 680.) Whether the finding of the criminal court Justice should he applied in reaching a final determination has been discussed in greater detail in the Wirth and Eckardt decisions (supra). In the Bobula case the Court of Appeals had decided as follows: ‘1 Matter remanded to the Surrogate’s Court, Erie County, to determine whether the killing herein occurred under circumstances which would exculpate the killer from criminal liability, e.g., if he were insane. If it he determined that he was legally insane and there could have *624 been no successful prosecution of John Bobula had he lived, then the property should be distributed as originally provided for by the Surrogate.”
As appears from the transcript of the testimony taken before Supreme Court Justice Gaughau, the overwhelming psychiatric testimony was to the effect that George Fitzsimmons was insane at the time of the assaults committed upon his parents. Dr. Seymour E. Weissman, a physician specializing in psychiatry, concluded that George Fitzsimmons was psychotic and diagnosed his condition as 11 schizophrenic reaction, paranoid type.” This same conclusion was reached by Dr. Armand DiFrancesco, a qualified psychiatrist. Both psychiatrists had traced the medical history of George Fitzsimmons back to 1961, a time when he had been committed to the State Hospital for observation. The sole expert witness called by the State, Michael J. Lynch, M. D. acknowledged that George Fitzsimmons was suffering from a mental disease and that he was a paranoid personality, but refused to acknowledge that he was insane at the time of the assault. The overwhelming weight of the evidence is conclusively convincing that at the time of the death of William J. Fitzsimmons and Pearl T. Fitzsimmons, his wife, George Fitzsimmons was legally insane. Thus, he should be entitled to take as distributee under the respective estates of his parents.
As pointed out by the guardian ad litem, the decision of the Supreme Court Justice has established as a matter of law the legal insanity of George Fitzsimmons. The Supreme Court decision has exculpated the killer from criminal liability.
It has now been conclusively established on the merits that there can be no successful prosecution of George Fitzsimmons which would preclude him from taking as a distributee. The test established by the Court of Appeals in Matter of Bobula (19 N Y 2d 818, supra) has been met. Whether it be by reason of the prosecution undertaken by the State, or whether it be by reason of the conclusiveness of the legal insanity revealed in the transcripts of testimony in the murder trial, the conclusion must of necessity be the same: that is, that George Fitzsimmons was legally insane at the time that his parents met their respective deaths.
It is accordingly the decision of this court that-by reason of his insanity at the time of the alleged killing, George Fitzsimmons is exculpated from legal liability and is entitled to his distributive share in the estates of both his deceased mother and father.